TRINITY METHODIST EPISCOPAL CHURCH v. CITY OF SAN ANTONIO. (No. 5973.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 13, 1918. Rehearing Denied March 13, 1918.)

1. TAXATION ⬅=204(2), 251—EXEMPTIONS — STATUTES—CONSTRUCTION.

In considering exemptions from taxation, the law must be strictly construed, and the burden is on one claiming exemptions to bring himself clearly within the statute or Constitution.

2. TAXATION ⬅=244—EXEMPTIONS—"ACTUAL PLACES OF RELIGIOUS WORSHIP"—"INSTITUTIONS OF PURELY PUBLIC CHARITIES."

A parsonage or rectory, used as a residence for the minister, is not exempt from taxation under Const. art. 8, § 2, or Rev. St. 1911, art. 7507, §§ 1, 6, exempting "actual places of religious worship" and "institutions of purely public charities."

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Actual Place of Religious Worship; First and Second Series, Purely Public Charity.]

3. TAXATION ⬅=195—EXEMPTIONS.

Const. art. 8, § 2, in exempting merely places of religious worship and institutions of purely public charities, must not be construed so as to exclude necessary grounds for entry into the buildings, and Rev. St. 1911, art. 7507, §§ 1, 6, is not unconstitutional in providing that necessary grounds be exempt.

4. TAXATION· ⬅=244 — "ACTUAL PLACES OF RELIGIOUS WORSHIP" — "INSTITUTIONS OF PURELY PUBLIC CHARITIES."

There is a clear and logical difference between a place of worship and an institution of public charity, and that one is used for the other does not change its character, under Const. art. 8, § 2, and Rev. St. 1911, art. 7507, §§ 1, 6, relating to taxation.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by the City of San Antonio against the Trinity Methodist Episcopal Church to recover taxes and foreclose a lien. Judgment for plaintiff, and defendant appeals. Affirmed.

C. A. Keller, of San Antonio, for appellant. R. J. McMillan and R. G. Harris, both of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee to recover taxes and foreclose a lien on certain property in the city of San Antonio, owned by appellant, being the west half of lot No. 7 in new city block 418, at the southeast corner of Pecan street and an alley, being known as the Trinity Methodist Episcopal Church parsonage property. Appellant claimed exemption from taxation under the Constitution and laws of Texas. The trial court rendered judgment in favor of appellee for the amount of the taxes, amounting to $359.52, and foreclosed the lien on the property.

There is no statement of facts, and the findings of fact of the trial judge are adopted as the conclusions of fact of this court.

There was no question as to the taxes being legal and just, unless the property on which they were assessed was exempt from taxation under the provisions of article 8, § 2, of the Constitution, and article 7507, §§ 1 and 6, Revised Statutes of Texas.

Article 8 of the Constitution, section 2, cited, is permissive, giving authority to the Legislature to exempt certain property, naming it, from taxation among the list being "actual places of religious worship * * * and institutions of purely public charities." The Legislature, in pursuance of the constitutional permission, passed article 7507, which seeks, among other property, to exempt from taxation:

"Public schoolhouses and houses used exclusively for public worship, the books and furniture therein and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit," and "all buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profits, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not."

[1] The Constitution provides that all "taxation shall be equal and uniform," and that "all property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Const. art. 8, § 1. To this provision general exceptions are made,

---

⬅=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under which the Legislature may exempt certain, property specifically described. Section 2. In considering exemptions it is the rule that the law must be strictly construed and not enlarged, but confined to the very terms of the provision as to the exemption. Cooley, Taxation, p. 357. Following this rule the burden devolves upon any one seeking an exemption to bring himself clearly within the terms of the statute or constitutional provision, and, further, should any reasonable doubt as to the property being exempt arise, the doubt must be resolved in favor of the government levying the tax. Morris v. Masons, 68 Tex. 698, 5 S. W. 519.

The facts in this case show that the property in question was a parsonage, set apart by the authority of the church, and used as a living place or residence for each minister of the church that might be assigned to serve the church; that it was on the west half of the lot adjoining the church lot. The use of the parsonage by the minister in charge formed a part of his salary or support, and the children of the Sunday school used the water and toilet in the parsonage when Sunday school was held, but it was never leased or used except as a residence for the pastor. The evidence totally fails to show that the parsonage was used exclusively for "public worship" or "purely public charity."

[2, 3] Not only has appellant failed to bring its parsonage within the terms of the Constitution, but also within the broad terms of the statute. We think it is clear that the Legislature did not have in view the exemption of a parsonage built on a lot contiguous to a church lot any more than one built on a different block or miles away, and do not think the provisions of the statute as to the exemption of churches from taxation, when properly construed, conflict with the constitutional provision on the subject. The Constitution undoubtedly intended in granting permission to the Legislature to exempt houses used exclusively for religious worship from taxation, to grant permission to exempt the land on which the house is built and other ground on which to enter and leave the church and ground immediately surrounding the house which would be "grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same." What would be necessary grounds would be a question of fact, but this would not render the statute unconstitutional. The Constitution will not be so construed as to defeat its own purposes, which would be the case if only the ground actually covered by the house used for religious worship was exempt. The construction must be reasonable and not such as to defeat the very end desired.

[4] It is so manifestly without any ground to sustain it that we need not give any extended consideration to the proposition that a parsonage furnished for the exclusive use of the pastor of a church is a building belonging to an institution of "purely public charity." The Constitution and statute make a clear and logical distinction between a "house used exclusively for public worship" and a building "belonging to institutions of purely public charity," and because acts of charity might emanate from the one or public worship be held in the other would not change their character. The building to be exempt must be used or owned for one or the other purpose, but the parsonage in this instance was not used for either.

It is well settled by excellent authority that the exemption of church property does not include a rectory or parsonage. St. Mark's Church v. Brunswick, 78 Ga. 541, 3 S. E. 561; State v. Board of Assessors, 52 La. Ann. 223, 26 South. 872; Third Cong. Soc. v. Springfield, 147 Mass. 396, 18 N. E. 68; Hennepin County v. Grace, 27 Minn. 503, 8 N. W. 761; Presbyterian Church v. New Orleans, 30 La. Ann. 259, 31 Am. Rep. 224; People v. First Cong. Church, 232 Ill. 158, 83 N. E. 536; Broadway Church v. Comm., 112 Ky. 448, 66 S. W. 32. In the last case cited it is said:

"Parsonages are not exempt, although erected on a portion of the church lot which would otherwise be exempt, and occupied by the minister free of rent, if the language of the exemption only includes places actually used for religious worship, with the grounds attached thereto, and appurtenant to the house of worship. * * * The authorities on this point seem to be unanimous."

This was held under a constitutional provision much broader than that used in the Constitution of Texas, for the Kentucky law exempts not only "places used for religious worship," but also "the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns and not exceeding two acres in the country."

The language of the Constitution must fix the exemptions, no matter what the language of the statute may be, and under section 2 of article 8 of the Constitution appellant has not shown itself entitled to exemption for its parsonage as being an "actual place of religious worship" or an "institution of purely public charity." The evidence failed to show that the parsonage was used for a place of religious worship, but as a home for the pastor. It may be that it was a necessary appurtenance to the church, but the Constitution does not exempt anything attached or appurtenant to a church on the ground of necessity. Permitting the preacher to use the building may have been very charitable, though it appears that the use of the house paid a part of the salary earned by or promised to him, and certainly it was not in the interest of the public that he should reside in the parsonage.

In order to obtain the exemption as an "institution of purely public charity," appellant was compelled to show that the church was

such institution, and also, that the parsonage was used exclusively for "purely public charity." Morris v. Masons, 68 Tex. 702, 5 S. W. 519. No matter what the church may have been in the way of a charitable institution, the parsonage was not used for public charitable purposes. Orphan School v. Louisville, 100 Ky. 470, 36 S. W. 921, 40 L. R. A. 123.

The case of State v. Methodist Church, 163 S. W. 628, does not sustain the contention of appellant in this case. In the cited case it was admitted by the state that the three lots claimed to be exempt were used as an actual place of religious worship and the court said:

"If the state ever had any case, we think it was swept away and destroyed when it admitted that the property in question forms a part of the property of the church, used as an actual place of religious worship, * * * and that the church which owned the property is a religious organization and an institution of purely public charity, and the property had never been leased or otherwise used with a view to profit."

The admissions of the state doubtless deterred the court from fully considering the Constitution on the subject, for the court stated that the state had not contended that the statute was unconstitutional. No authority but article 7507 is cited by the court. The court evidently thought there was no necessity for investigation when the state had admitted all the church had to prove.

The Missouri case of Bishops v. Hudson, 91 Mo. 671, 4 S. W. 435, shows an utter lack of proper consideration of the question before the court, and should not be followed, especially as it is in the very teeth of the decisions of almost every other court in the Union that has considered the question.

In the well-considered case of People v. Feitner, 168 N. Y. 494, 61 N. E. 762, the Court of Appeals of New York held:

"The rectory is a separate building located on the northeast corner of the church. The building consists of a reception room, library room, study, dining room, * * * and sleeping rooms. It is occupied by the rector, his family, and servants. It is contended on behalf of the respondent that the work carried on by the church is such as to require the constant attendance, both night and day, of the rector or his assistants, and that the rector having the general supervision of the entire work, his presence is necessary so that whatever calls may be made either upon himself, the assistants, or sisters, he can, if necessary, be reached for advice and consultation. * * * We do not, however, favor this view."

Also, in the case of Ramsey Co. v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783, 11 L. R. A. 175, it was held that a rectory or parsonage belonging to a church society, its primary use being for the secular purpose of a residence for the priest or minister, is not exempt, although some part of it is also used for religious purposes.

In the case of First Cong. Church v. Board of Review, 254 Ill. 220, 98 N. E. 275, annotated in 39 L. R. A. (N. S.) 437, the question herein involved is thoroughly discussed, and it was held that an exemption from taxation of property used exclusively for religious work does not include a parsonage used as a residence for the pastor of a church and his family, and such religious work as naturally would center about the pastor's residence. Numerous cases are cited in the opinion, and many others are found in the footnotes in the L. R. A., which fully sustain the opinion.

The judgment is affirmed.